UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THE MERCY HOSPITAL, INC.,

    Plaintiff

v.

MASSACHUSETTS NURSES
ASSOCIATION,

    Defendant

Civ. No. 04-30014-MAP

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
TO VACATE ARBITRATION AWARD**

### 1. Background

This matter is before the Court on the Plaintiff Mercy Hospital's ("Hospital") Complaint to vacate an arbitration award in favor of the Defendant, Massachusetts Nurses Association ("Association"). On August 29, 2003, the Hospital terminated Nancy Dufault, an employee in the bargaining unit represented by the Association. Pursuant to the collective bargaining agreement between the Hospital and the Association[1], the Association filed a grievance regarding Ms. Dufault's termination. The grievance proceeded to arbitration. On December 26, 2003, Arbitrator Suzanne Butler issued an opinion and award ("the Award") directing that Ms. Dufault be returned to work, and made whole for losses incurred due to the Hospital's improper termination. The Hospital filed a complaint to vacate the arbitration.

---

[1] A copy of this collective bargaining agreement is included for the Court's reference as Exhibit 1 hereto.

## 2. Response To Plaintiff's Statement Of Facts

In an effort to re-litigate this grievance in its entirety, the Hospital has attempted to place before the Court many paragraphs of allegations that are simply not germane to the Court's consideration of its Complaint, as well as its entire post-hearing brief to the Arbitrator. This is not a summary judgment hearing in an ordinary civil case, in which any allegations supported by affidavit may be offered by a party and considered by the Court.[2] The Association contends that the facts before this Court are as the Arbitrator found them, even if the Arbitrator erred in some respect, as long as the Arbitrator has not been shown to have acted in bad faith. See, e.g., El Dorado Technical Servs., Inc. v. Union General de Trabajadores de Puerto Rico, 961 F.2d 317, 320 (1st Cir. 1992). Here, there has been no such showing. The Association relies on the statement of facts contained within the Arbitrator's decision. See Exhibit 1 to Plaintiff's Memorandum. In particular, the Arbitrator found as follows:

1. The termination was without just cause on procedural grounds alone. Award at 11 and 15.
2. The grievant's testimony at the arbitration hearing was credible. Award at 11.
3. The grievant was an exceptionally competent, hardworking, ICU nurse. Award at 11.
4. The grievant's most recent evaluation found that, overall, she met the standards expected by the Hospital, and that she had exceeded the Hospital's standards in a number of areas, including documenting. Award at 3.
5. One of the grievant's deeds which the Hospital alleged violated nursing practice was in fact common on the ICU, at least prior to the grievant's termination. Award at 12.

---

[2] The Association does not contend that no evidence other than the Award may be considered by the Court. Evidence seeking to establish or deny the existence of a "well-established public policy" may, for example, be offered. However, a party seeking to vacate an arbitration award may not simply attempt to re-litigate the grievance.

2

6. There was no independent evidence whatsoever that the grievant herself was at any time under the influence of controlled substances. Award at 13 and 15.
7. The grievant's testimony at arbitration was more corroborated than rebutted. Award at 13.
8. There is no evidence, or contention, that any patients suffered any negative consequences as a result of the grievant's actions. Award at 13.
9. The collective bargaining agreement permits discipline or discharge of non-probationary employees only for just cause. Award at 2.
10. The grievant was a non-probationary employee. Award at 2 (Dufault employed at Hospital since 1977).

The Association objects to the Hospital's "statement of facts" to the extent that it deviates from the facts as determined by the Arbitrator, and, to the extent necessary, moves to strike same. The Association likewise objects to the inclusion of the Hospital's post-hearing brief as an exhibit to its Brief, both because it is irrelevant to the Court's consideration of the Arbitrator's award, and because its inclusion effectively permits the Hospital to exceed the twenty-page limit for memoranda supporting or opposing motions set forth in Local Rule 7.1(B)(4). To the extent necessary, the Association moves to strike same.[3]

Finally, to the extent that the Hospital's statement of facts relies on the testimony of witnesses at the hearing, as contained in the transcript excerpts attached as Exhibit 3, and the self-serving document attached as Exhibit 4, to the Hospital's Brief, the Association notes that the Arbitrator was not required to accept the testimony of the Hospital's witnesses, and that the Arbitrator found the grievant's testimony credible. By implication, testimony from other witnesses contradicting the grievant's testimony was less credible. The Association moves to strike Exhibits 3 and 4 to the Hospital's Brief.

---

[3] In the alternative, should the Court decline to strike the Hospital's post-arbitration brief, the Association moves for leave to submit its own post-arbitration brief as an addendum to this Memorandum.

3

### 3.  Standard Of Review

The leading case in enforcement of labor arbitration awards is Eastern Associated Coal Corp. v. United Mine Workers of Amer., 531 U.S. 57 (2000) (hereinafter, "Eastern Associated"). See Judith Stilz Ogden, "Do Public Policy Grounds Still Exist For Vacating Arbitration Awards?", 20 Hofstra Lab. & Emp. L. J. 87 (2002) (discussing implications of Eastern Associated ruling). In that case, the Supreme Court reiterated that because the parties to a collective bargaining agreement "have bargained for the arbitrator's construction of their agreement," an arbitrator's award is entitled to great deference by the courts. Eastern Associated at 62 (cited in Boston Medical Center v. Service Employees Int'l Union Local 285, 260 F.3d 16, 21 (1st Cir. 2001)) (hereinafter, "BMC").

A violation of public policy continues to be one of the limited circumstances in which a court may refuse to enforce an arbitration award. Eastern Associated at 62. The Court noted that (as in the instant case) "both employer and union have granted to the arbitrator the authority to interpret the meaning of their contracts language, including such words as 'just cause.'" Id.

> Hence, we must treat the arbitrator's award as if it represented an agreement between Eastern and the union as to the proper meaning of the contract's words "just cause." For present purposes, the award is not distinguishable from the contractual agreement.

Id. (citation omitted). The question before the Court, then, was whether the parties' effective agreement to reinstate the grievant was unenforceable as contrary to public policy. Such a public policy must be "explicit," "well-defined," and "dominant," and derived from "laws and legal precedents" rather

4

than "from general considerations of supposed public interests." Id. (citation and internal quotations omitted). Although the grievant in Eastern Associated – who held a "safety-sensitive position" - had twice tested positive for drug use, the Court held that it was not against public policy for the Arbitrator to order his reinstatement, particularly in light of the "last-chance" nature of the award. Id. at 63-67.

The First Circuit recently considered an award reinstating a nurse in light of Eastern Associated in its BMC decision. In that case, an arbitrator ordered the reinstatement of a nurse who had been terminated for substandard care leading to the death of a patient. BMC at 19-20. As in the instant case, the BMC arbitrator had applied a just cause provision of a collective bargaining agreement that applied to non-probationary employees. Id. at 22. In addition to arguing that the arbitrator exceeded authority (an argument not present in this case), the employer argued that the reinstatement of the grievant violated an established public policy providing for safe and competent nursing care. Id. at 23. However, despite the body of regulations and laws (some also cited by the plaintiff here) reflecting a concern for the quality of nursing care, the First Circuit found that there was no public policy prohibiting the reinstatement of the grievant, who had made clinical misjudgments but had a long and unblemished career as a nurse. Id. at 23-25. The arbitration award was enforced.

4. **No Public Policy Prohibits The Reinstatement Of An Excellent, Experienced Nurse Who Has Made A Few Non-Critical Documentation Errors.**

Here, the Court is faced with a grievant whose only lapses in a long and distinguished nursing career relate to minor and infrequent documentation errors, and whose reinstatement is nonetheless attacked as contrary to public policy. The absurdity of the employer's position is self-evident; if carried out to its logical conclusion, it would prohibit employment in the nursing profession of anyone who ever made a documentation error of any magnitude.

There is no question that, as the First Circuit found, "Massachusetts law reflects a concern for nursing competence and patient safety." BMC at 23. There is, however, no clearly-defined public policy against employment of nurses who, like the grievant, make occasional and non-critical errors in documentation, even in documentation of the withdrawal and administration of narcotics. Rather, as one might expect, public policy as evidenced by the Hospital's own policies (as well as by long-honored precepts of progressive discipline) supports a non-punitive approach to correcting documentation errors. See Exhibit 2 hereto (Union Exhibit 22 from the arbitration hearing in this case) (describing "non-punitive" approach to medication events). Compare BMC at 25 ("The deficiencies in the grievant's standard of care appear to be... amenable to correction through supplemental education and training.") (quotation from arbitrator's award).

The Hospital argues forcefully that the Arbitrator missed the point of its argument, and failed to consider certain evidence. It is not clear how the Hospital read the Arbitrator's mind in this regard, or what the relevance of this

allegation would be even if true, as there is no allegation that the Arbitrator acted in bad faith. However, confronting the Hospital's argument that this is not a mere question of documentation errors head on, but rather one of unaccounted medication, the Association replies that (as the Arbitrator found), the only[4] reason that the grievant was unable to account for certain medications was that her documentation was in some ways deficient. The Hospital never presented evidence to back up the "suspected drug diversion" for which it terminated the grievant. In effect, the Hospital is arguing that it is against public policy to employ a nurse who makes documentation errors, even if those errors are within normal expectations of human capacity and if those errors do not cause any patient to come to harm. It is unlikely that any nurse or other medical professional would be employable under the Hospital's proposed standard.

In an effort to generate a clear public policy against the employment of the grievant, the Hospital cites to certain Massachusetts regulations relating to the practice of nursing. See Hospital's Brief at 13-14. These regulations are, of course, enforced by the Board of Registration in Nursing within the Commonwealth's Division of Professional Licensure. The regulations cited by the Hospital do not explicitly forbid the employment of someone in the grievant's situation. The Board has not to date seen fit to revoke, suspend, or place any limitations on the license held by Nancy Dufault.[5] It would arguably be against public policy for an arbitrator to order the employment of an

---

[4] Aside, of course, from the Hospital's failure to provide complete medical records for the patients in question in a timely fashion, which – as the Arbitrator found – made it impossible for the grievant to reconstruct the scenarios with which she was presented.

7

unlicensed nurse. However, the Hospital may not take upon itself the enforcement of the Board's regulations and treat her as unlicensed. Compare Eastern Associated at 67 ("Regarding drug use by persons in safety-sensitive positions, then, Congress has enacted a detailed statute. And Congress has delegated to the Secretary of Transportation authority to issue further detailed regulations on that subject. Upon careful consideration, including public notice and comment, the Secretary has done so. Neither Congress nor the Secretary has seen fit to mandate the discharge of a worker who twice tests positive for drugs. We hesitate to infer a public policy in this area that goes beyond the careful and detailed scheme Congress and the Secretary have created.").

Applying the Eastern Associated standard to the facts of this case as determined by the Arbitrator, as the First Circuit applied that standard to the facts in BMC, it is evident that there is no explicit and well-defined public policy against employment of an accomplished nurse who, despite overall good documentation skills, has made a few non-critical errors. The Hospital's Motion must be denied.

### 5. The Hospital Has Not Bargained For The Unreviewable Right To Terminate Non-Probationary Employees.

Every (or nearly every) decision discussing the enforcement of arbitration awards emphasizes the importance of deference to the bargain that the parties themselves struck. See, e.g., BMC at 20-22. This extends beyond deference to the arbitrator's award in any particular case, to recognition that either party has the opportunity in negotiations to seek greater rights with regard to some

---

[5]   Nursing licenses may be checked at the Board of Registration's website,

aspect of the bargaining relationship, including discipline and discharge. Basic to a stable bargaining relationship is the rule that no party may achieve through litigation what it has not bargained for through negotiation.

Here, the Hospital has bargained for unreviewable rights with regard to probationary employees, as well as the right to remove from duty nurses whose fitness for duty it reasonably questions. See Exhibit 1 at §2.01 and §6.09. Otherwise, it has agreed that employees may be disciplined or discharged only for just cause. To permit it to define "just cause" so as to remove the grievant from employment in this case would be to grant it powers far beyond those it has bargained for.

### 6.   The Award Must Be Confirmed

There being no legitimate basis to vacate the arbitration award, the Association respectfully requests that the Court confirm the award.

### 7.   Conclusion And Prayer For Relief

The Hospital's termination of Nancy Dufault was without just cause, and has caused a great deal of emotional and financial distress to an excellent nurse and her family. The Award reinstating her is entirely legitimate and consistent with public policy. The Association respectfully requests that the Court DENY the Hospital's Motion to Vacate the Award, and GRANT its Cross-Motion to Confirm the Award. There having been no legitimate basis to move for the vacation of the Award, the Association further requests that the Court award costs, attorneys fees, and such other and further relief as justice may require.

---

http://www.mass.gov/dpl/boards/rn/index.htm.

In the alternative, should the Court find the Award deficient in some respect, the Association respectfully requests that the Court remand the matter to the Arbitrator for further findings of fact based on the evidence already presented to her.

Respectfully submitted,

For the Massachusetts Nurses Association

By its attorney

/s/ Mark A. Hickernell
Mark A. Hickernell
McDonald & Associates
Cordaville Office Center
153 Cordaville Road, Suite 210
Southborough, MA 01772-1834
(508) 485-6600

Dated: July 23, 2004

## CERTIFICATE OF SERVICE

I, Mark A. Hickernell, hereby certify that I have this day by first-class mail, postage prepaid, served a copy of the foregoing Memorandum In Opposition To Plaintiff's Motion To Vacate Arbitration Award upon Maurice M. Cahillane, Esq., Egan, Flanagan and Cohen, P.C., 67 Market Street, P.O. Box 9035, Springfield, Massachusetts 01102-9035.

Dated: July 23, 2004

/s/ Mark A. Hickernell
Mark A. Hickernell

10