UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-30014-MAP

THE MERCY HOSPITAL, INC.,        ]
                                     ]

             Plaintiff        ]

                                     ]

vs.                                   ]

                                     ]

MASSACHUSETTS NURSES ASSOCIATION,  ]
ASSOCIATION,                   ]

                                     ]

            Defendant      ]

## PLAINTIFF'S REPLY BRIEF AND OPPOSITION
## TO MOTION TO CONFIRM ARBITRATION AWARD

Defendant, Massachusetts Nurses Association has responded to the plaintiff's Motion to Vacate the Arbitration Award and moved for confirmation. Plaintiff now opposes that confirmation and responds as follows:

Defendant fails to directly confront the plaintiff's arguments and fails to demonstrate that the arbitration award complies with the well established and specific public policies cited by the plaintiff.

## I.    THIS IS NOT A CASE OF MERE DOCUMENTATION ERRORS.

Defendant asserts that "the Court is faced with a grievant whose only lapses in a long and distinguished nursing career relate to minor and infrequent documentation errors...". (Defendant Brief, p. 6). It is clear from the arbitrator's opinion, that the case was never merely about

documentation errors. For instance, at page four of the decision, the arbitrator describes the

original accusations:

> "She was told there had been a discrepancy found between what
> she had removed from the Omnicell and what the SMS showed she
> had administered."
> Opinion, p. 4 (Pl. Exh. 1)

On page 6, the arbitrator describes another situation presented to the grievant which

involved the *amount* of morphine she had withdrawn for a patient, not documentation. (Opinion,

p. 6, Pl. Exh. 1). As plaintiff's Exhibit 4 shows (Scenario, #3, p. 4) the issue was the withdrawal

of more morphine than had been ordered by the physician and not just the failure to document

administration.[1]

Even though the arbitrator's opinion makes generalized statements that the grievant's

behavior can be explained by poor documentation, this general opinion cannot be squared with

the arbitrator's findings regarding particular accusations. Thus, with respect to the incident

where the grievant had, according to the Omnicell,[2] withdrawn multiple doses of Ativan at 2:20

a.m., for a patient who had already received (confirmed by both the medical record and

---

[1]     Here as elsewhere in its brief the plaintiff makes reference to portions of the
exhibits or testimony at the arbitration hearing. This is not an attempt to retry
factual issues decided by the arbitrator. Rather, it is a reference to undisputed
portions of the record in order to explain the context of the findings in the
opinion, to the extent they are not explicitly stated. Defendants do not point to
any specific plaintiff reference to the record that is in any way inaccurate or not in
fact an undisputed piece of evidence.

[2]     As noted previously, Ommnell records are controlled by computer – they cannot
be manipulated by the nurse. Ommnell records the withdrawal of controlled
substances automatically, and maintains a record of the drug, time, amount,
patient and nurse.

2

Omnicell) all the dose ordered, the arbitrator "accepts" the grievant's explanation that she placed

the substance into a *discontinued* IV bag that was hanging in the room, because she alleged that

she had previously and improperly (*by her admission*) used the IV to deliver prior doses. Even

putting aside the fact that this "explanation" makes no sense at all (what would be the point in

withdrawing new medication in order to place it into a discontinued and soon to be disposed IV

bag?); this cannot in any way be construed as a "documentation" issue. That fact is clear from

the arbitrator's opinion itself, because on page 13 of the Opinion, the arbitrator states:

> "The second witness on rebuttal, Patricia Duclos-Miller testified
> that it was not "proper" for nurses to record the administration of
> controlled substances in nurses' notes and it was not "proper" to
> take out additional medications ahead of time or to use a
> discontinued IV drip where the physician's order was for an IV
> push and that the extra narcotics (*i.e.,* those not administered)
> should be wasted in the presence of (and countersigned by) another
> R.N."

> Opinion p. 13 (Pl. Exh. 1)

Withdrawing additional medication before it is needed and essentially throwing it away,

is not a documentation issue. Adopting the grievant's assertion that she improperly administered

a controlled substance in contravention of the physician's order, is not a documentation issue.

The arbitrator's ultimate reliance on the notion that its acceptable for a registered nurse to

administer controlled substances to severely ill patients in any manner that is "possible" and "not

fatal" is not a documentation issue. It is instead a complete rejection of the Hospital's effort to

comply with Federal and State laws and regulations regarding the use of controlled substances,

and nursing practice.

3

Other specific accusations, essentially ignored by the arbitrator, were matters that could not be explained by poor documentation. On two occasions, Ms. Dufault withdrew a prescribed dosage of Ativan from Omnicell at or about the same time as another nurse withdrew the same amount for the same patient. (Pl. Exh. 4, #'s 2 and 3, pp. 1-2). In the first instance, the other nurse was a trainee, working with Ms. Dufault. (Pl. Exh. 4, pp. 1-2). In the second case, the patient was not the responsibility of Ms. Dufault at all, but the responsibility of another registered nurse. (Pl. Exh. 4, pp. 1-2). Nonetheless, in each case, Ms. Dufault withdrew an extra dose of the medication, even though the records showed that in each case, the other nurse and only the other nurse had administered the medication. This was not a question of documentation, this was a question of what happened to the extra doses withdrawn from the Omnicell and left unaccounted for. As in all other cases, there is no record of, or witnessing of "waste".

In another instance, the grievant withdrew 14 mg. of morphine within two hours for a patient who had been prescribed 2 mg. (Pl. Exh. 4, p. 4). While plaintiff realizes that facts cannot now be found in District Court, the information is presented to show that this was not an issue of poor documentation, or of a tired nurse, forgetting to record something. The issue in almost every instance was that the grievant had withdrawn from Omincell more controlled substance than called for by the physician, without any reasonable explanation for what became of it.

As a result, even though the arbitrator herself may have sometimes characterized the issues as documentation errors, it is clear from the face of the opinion that the arbitrator is prohibiting the hospital from disciplining the nurse for not just poor documentation, but for

removal of excess controlled substances, failure to follow physician's orders and failure to document.[3]

The arbitrator also accepts, as an explanation for removing too much controlled substance in multiple instances, a failure to record and have waste witnessed. Pursuant to state law and regulation, it is required practice for a nurse who has withdrawn more medication than is prescribed, and therefore, needs to waste some, to not only record what was wasted but to have this witnessed in writing by another nurse. (Pl. Exh. 3, Pl. Exh. 3, Vol. IV, pp. 38-39, *244 CMR § 9.03 (39)*). The presumption of the requirement is that there will be some occasions when the dose prescribed is smaller than the smallest available container, thereby necessitating the waste of some of the controlled substance. However, without some safeguard, there is no way to know what a nurse is doing with the excess controlled substance. If the hospital cannot enforce the requirement that there be a witness (in writing) *and* documentation, then any nurse with a desire to divert controlled substances, could do so with impunity.

The entire reason for having rules and regulations – both those of the Department of Public Health and the Hospital – is to ensure that those handling controlled substances cannot take them without being accountable. Under the arbitrator's decision, the Hospital's attempt to enforce its obligation to monitor the use of controlled substances is futile and useless. Only by actively catching a nurse in the act of stealing red-handed could the hospital be able to discipline someone regarding the use of controlled substances. By the arbitrator's rationale, any hospital

---

[3]     Plaintiff does not mean to belittle the issue of documentation. The arbitrator's position as to this issue is repellant to public policy as well. Massachusetts regulates specifically requires documentation in accordance with accepted standards of nursing practice. *244 CMR § 9.03 (39)*.

employee with access to controlled substances and a desire to misuse them is home free as long as they claim they forgot to write something down.

The reason State law requires both proper documentation *(244 CMR § 9.03 (39)) and* maintenance the security of controlled substances *(244 CMR  § 9.03 (35)) and* administration of prescription drugs in the manner prescribed by the physician *(244 CMR  § 9.03(38))* is to prevent those with access to controlled substances from having carte blanche in dealing with them.

## II.    STATE REGULATIONS AS TO NURSING PRACTICE AND PROFESSIONAL LICENSURE DO NOT RESTRICT THE HOSPITAL'S OBLIGATION TO MONITOR THE USE OF CONTROLLED SUBSTANCES.

Defendant argues that the existence of the Board of Registration in Nursing, which has the ability to revoke or suspend the grievant's license, prevents the Hospital from using a public policy argument to vacate the arbitrator's award.  Essentially, defendant argues that unless the nursing regulations mandate the termination of the grievant, the Hospital cannot claim public policy is offended, citing *Eastern Associated Coal Corp. v. United Mine Workers of America,* 531 U.S. 57 (2000).  But unlike the situation in *Eastern,* the laws and regulations at issue here speak to controlled substances and to nursing practice and are not a statutory and regulatory scheme concerning employment issues.  In *Eastern,* the employer had no obligation regarding the drugs themselves.  The employer had no control over drugs obtained by employees elsewhere. Here the Hospital and its employees and agents are directly using the drugs and have an independent responsibility for them.  In *Eastern* the government regulations themselves spoke

directly to employment issues and specifically did not include termination for the offense alleged. *Eastern* at 65.[4]

As an entity with a responsibility for the controlled substances, the Hospital's need to enforce regulations with employment action is part and parcel of its statutory obligation. The idea that the hospital should wait for Board of Registration action before taking employment action, would frustrate the regulatory purposes. As defendant is aware, there are in fact proceedings at the Board presently and even though two years have passed, they are unresolved. There is nothing in the regulatory scheme to suggest the Hospital should wait for Board proceedings when it has its own obligations and responsibility. Those obligations and responsibilities are hindered by the arbitrator's decision.

## III.    CASE LAW SUPPORTS THE PLAINTIFF'S GROUNDS FOR VACATING THE AWARD.

Defendant argues that this case is similar to *Boston Medical Center v. Service Employees International Union Local 285*, 260 F. 3d 16, 21 (1st Cir., 2001) (*BMC*). There, the First Circuit reversed a District Court decision vacating the reinstatement of a nurse whose negligence had led to a patient's death, based on general public policy, concerns as to patient safety and competent care. *Id.*, at 24-26. Here in contrast, the nurse's behavior as found by the arbitrator, violated several specific State regulations. In *BMC* there was no finding that the nurse was generally incompetent or incapable, *id.* at 26. The First Circuit stated that these cases should involve a fact specific inquiry:

---

[4]        In fact in *Eastern* the regulations *favored* rehabilitation efforts. *Eastern*, at 65.

> "The precedent on the public policy exception supports this fact
> specific approach to considering the consequences of reinstating an
> employee found to have engaged in misconduct."

> *BMC* at 26.

The *BMC* court further stated that there are circumstances where an award can be vacated

even if there is not a specific law or regulation barring reinstatement:

> .... we acknowledge that there might be conduct so egregious that
> reinstatement might thereafter the general public policy promoting
> the competence of nurses and patient safety. *See id.* at 63, 121 Sct.
> 462. ("We agree in principle that court's authority to invoke the
> public policy exception is not limited solely to instances where the
> arbitrator award itself violates positive law")....

> *BMC* at 26.

This is consistent with the *Eastern* case where the Supreme Court held again that "the

public policy exception is not limited solely to instances where the arbitrator's award itself

violates positive law". *Eastern* at 63.

Notably, the *BMC* court cites with approval the case of *Russell Memorial Hospital

Association v. United Steel Workers of America*, 720 F. Supp. 583 (F.D. Mich., 1989). There, the

nurse was discharged for negligence in the administration of medication. The court cited *United

Paperworks International Union v. Misco, Inc.*, 484 U.S. 29 (1987) permitting the vacation of an

award "when the award creates an explicit conflict with other laws and legal principles, *484 U.S.

at 43. Russell Memorial*, at 585. There, the policy of safe and competent nursing care – was a

8

far less specific policy than the policy and regulations at issue in this case.[5] The court vacated

the reinstatement award. *Id.* at 587.

Also relevant to the present case is *Iowa Electric Light and Power Company v. Local 204*

*International Brotherhood of Electrical Workers*, 834 F. 2d 1424 (8th Cir., 1987). There the

court held that it could vacate an arbitration award reinstating a nuclear power plant machinist

who had violated safety regulations by use of shortcuts, *id.* at 1426. The court held that the

"question of public policy is ultimately one for resolution by the courts" and that "we must

answer it by taking the facts as found by the arbitrator, but reviewing his conclusions de novo."

*Iowa* at 1427. "An arbitrator may be overruled when the award, although not requiring illegal

conduct, is said to be inconsistent with some significant public policy." *Id.* at 1427. Here, the

arbitrator found that the grievant engaged in shortcuts – on a serious matter involving public

safety and controlled substances.

<div style="margin-left: 40%;">

THE MERCY HOSPITAL, INC.
BY ITS ATTORNEY,

</div>

I certify that a true copy of the above document
was served upon (each party appearing pro se and)
the attorney of record for each other party by

mail (by hand on ___8/23/04___

    _[signature]_
    **Attorney**

<div style="margin-left: 40%;">

_[signature]_

Maurice M. Cahillane, Esq.
EGAN, FLANAGAN AND COHEN, P.C.
67 Market Street - Post Office Box 9035
Springfield, MA 01102
(413) 737-0260; Fax: (413) 737-0121
BBO# 069660

</div>

0423-020804\74943.wpd

---

[5]    The *Russell Memorial* court further noted that the possiblity of revocation of a
license for the conduct at issue, *enhanced* the hospital's position. *Id.* at 586.