UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE MERCY HOSPITAL, INC.,<br>  Plaintiff | )<br>)<br>) |
| v. | ) Civil Action No. 04-30014-MAP<br>)<br>) |
| MASSACHUSETTS NURSING<br>ASSOCIATION,<br>  Defendant | )<br>)<br>)<br>) |

REPORT AND RECOMMENDATION WITH REGARD TO
PLAINTIFF'S MOTION TO VACATE AND DEFENDANT'S MOTION
TO CONFIRM ARBITRATION AWARD (Document Nos. 11 and 16)
January 13, 2005

NEIMAN, U.S.M.J.

In this action, Mercy Hospital, Inc. ("Plaintiff") seeks to vacate an arbitration award to the Massachusetts Nursing Association ("Defendant"). The award ordered Plaintiff to reinstate Nancy Dufault, a member of Defendant's union, after her discharge as an intensive care nurse on August 29, 2002. Plaintiff's motion to vacate the arbitration award, together with Defendant's cross motion to confirm, have been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the court will recommend that Plaintiff's motion to vacate be denied and Defendant's motion to confirm be allowed.

I. BACKGROUND

As the parties are well aware, the court must rely on the facts as the arbitrator found them. *See El Dorado Technical Servs., Inc. v. Union General de Trabajadores de Puerto Rico*, 961 F.2d 317, 320 (1st Cir. 1992). Here, Dufault was hired by Plaintiff

in 1977. At the time of her termination, some twenty-five years later, she was working the "night shift" (7 p.m. to 7 a.m.) in the intensive care unit ("ICU"). Dufault cared for seriously ill and dying patients, all of whom received various pain and anxiety-reducing drugs such as Ativan, Lorezapam and morphine. Her duties involved the administration of these medications as well as overseeing patient care by new nurses. The final performance evaluation given to Dufault prior to her termination stated that she had met the overall standards expected by Plaintiff and that she had exceeded the expected standards in documentation. She was also cited as being a very strong, expert ICU nurse.

In the fall of 2001, a medicine-tracking device called an "Omnicell" was introduced to the ICU. Omnicell is an ATM-like machine that records which nurses remove medicine from it, the patients for whom the medicine is destined, and the name and quantity of the medicines removed. The nurses obtain medication by entering their codes into Omnicell, receiving the medication through Omnicell, and then administering the medicine and recording its administration in a separate, computerized system called "MAR" or "SMS". Along with the other ICU nurses, Dufault was given a brief Omnicell training and then used the device alongside pre-existing forms.

The first discrepancy in Dufault's documentation was discovered in June of 2002 by Cindy Gallant, a nursing supervisor. Gallant noticed that there was a difference between the amount of Ativan that had been withdrawn from Omnicell and what had been administered to patients. After confronting Dufault about the discrepancy, Gallant found her explanation acceptable and let the incident pass without further comment.

In July, however, Gallant again noticed discrepancies in Dufault's paperwork and, after reviewing the records, placed Dufault on administrative leave effective August 21, 2002. Dufault was again told that there had been a discrepancy found between what she had removed from Omnicell and what she had charted as being administered to patients.

Thereafter, the Director of Medical and Surgical Nursing, Mary Brown, set up a meeting with Dufault for August 27, 2002. Dufault was presented with Omnicell readouts (which she had never seen before) and SMS readouts (which she had completed) and was asked to explain the discrepancies. Dufault offered some reasons and speculation but was uncertain as to exactly what had happened in every incident given that the documents referred to patients as far back as two months prior to the meeting.

Following the meeting, Director Brown met with Beverly Ventura, Plaintiff's Vice President. The two suspected that Dufault was diverting drugs and scheduled another meeting with her for August 29, 2002. Following that meeting, Dufault was given a final paycheck and a notice stating that her employment was being terminated for "[f]ailure to adhere to the standards of narcotic/controlled substance administration – suspected drug diversion."

Although Plaintiff never requested that Dufault take a drug test, she took three on her own. Two of the tests were within the first two weeks following her termination; both were negative for the presence of drugs. Then, in March of 2003, Dufault took a hair follicle drug test, which can detect the presence of drugs within the last six months,

and again the results were negative.

Meanwhile, arbitration hearings took place in February, June and July of 2003. Two issues faced the arbitrator: (1) whether Dufault's termination was for just cause under the applicable collective bargaining agreement; and (2) if not, what the remedy should be. After due consideration, the arbitrator issued an award ordering Default's reinstatement on December 22, 2003.

The arbitrator found that a preponderance of the evidence supported Dufault's denial of any culpability with respect to the drug diversion charge. Furthermore, the arbitrator believed Dufault was denied due process when not given prior access to all the documents used in the termination meetings. Nonetheless, the arbitrator found, Default gave credible explanations for the paperwork discrepancies. In essence, the arbitrator believed that Dufault had made mistakes in the paperwork, or had taken short-cuts, or helped out other nurses, thereby occasionally deviating from procedures (as did many of the other nurses). In the end, the arbitrator determined that Dufault's termination lacked just cause and directed Plaintiff to reinstate her, with back pay and interest and without loss of seniority, and to pay the costs of arbitration.

Plaintiff filed this action to vacate the arbitration award on January 23, 2004, pursuant to 9 U.S.C. § 10 and 29 U.S.C. § 301. In due course, the parties filed the instant cross motions and the court heard oral argument.

## II. STANDARD OF REVIEW

The standard for a court's review of an arbitration award in a collective bargaining case such as this is well settled and quite circumscribed. "Because the

parties to a collective bargaining agreement 'have bargained for the arbitrator's construction of the agreement,' the arbitrator's interpretation is entitled to great deference by the courts." *Boston Med. Ctr. v. SEIU,* Local 285, 260 F.3d 16, 21 (1st Cir. 2001) ("*BMC*") (quoting *Eastern Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000)). Thus, an arbitrator's interpretation of the agreement is rarely set aside, and even a finding that the interpretation is erroneous is not enough to overturn the award. *See id.* at 21.

Of course, as Plaintiff notes, a court may vacate an award if it violates public policy, but only in cases "where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and . . . ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987). When, as here, reinstatement is at issue, the question before the court turns not on whether the employee's conduct violated a public policy, but whether the reinstatement order itself does. *See BMC,* 260 F.3d at 23 (citing *Eastern*, 531 U.S. at 62-63). The public policy cannot be assumed or implied. Rather, the question is whether the arbitrator's reinstatement order "run[s] contrary to an explicit, well-defined, and dominant public policy, as ascertained by reference to positive law and not from general considerations of supposed public interests?" *Eastern*, 531 U.S. at 63 (citing *Misco*, 484 U.S. at 43).

### III. DISCUSSION

Plaintiff asserts that the arbitrator's reinstatement order here was contrary to

public policy.  In particular, Plaintiff contends that the documentation errors which led to Dufault's termination are all specifically prohibited by regulations, namely, those pertaining to standards of narcotic and controlled substance administration.  *See* 244 C.M.R. § 9.03(35), (38) and (39) (2004).[1]  Because the use of controlled substances is highly regulated by both state and federal law, Plaintiff continues, the arbitrator, in effect, prohibited the hospital from disciplining a nurse who violated these rules.

Although Dufault's actions may have, in fact, violated certain regulations, the court finds no compelling argument that the *reinstatement order* itself violated any public policy clearly articulated in a law or regulation.  In the court's estimation, therefore, Plaintiff's argument is misplaced for at least three reasons.

First, the Supreme Court's *Eastern* decision is instructive.  There, a truck driver

---

[1] In pertinent part, section 9.03 provides as follows:

(35) Security of Controlled Substances.  A nurse licensed by the Board and engaged in the practice of nursing shall maintain the security of controlled substances that are under his or her responsibility and control.

    . . . .

(38) Administration of Drugs.  A nurse licensed by the Board shall not administer any prescription drug or non-prescription drug to any person in the course of nursing practice except as directed by an authorized prescriber . . . .

    . . . .

(39) Documentation of Controlled Substances.  A nurse licensed by the Board shall document the handling, admission, and destruction of controlled substances in accordance with all federal and state laws and regulations and in a manner consistent with accepted standards of nursing practice.

was fired after twice testing positive for marijuana. The arbitrator determined there was no "just cause" for the termination and ordered reinstatement. As is true here, the employer sought to vacate the arbitrator's decision on public policy grounds. However, because no law mandated the discharge of an employee who tested positive for drug use, the Court found that the order to reinstate the employee did not violate public policy. Although "reasonable people [could] differ as to whether reinstatement or discharge [was] appropriate," the Court explained, "both employer and union have agreed to entrust this remedial decision to an arbitrator." *Id.*, 531 U.S. at 67.

      Plaintiff attempts to distinguish *Eastern*. In at least one way, however, the facts here are actually less favorable to the employer than those in *Eastern*; although Plaintiff had accused Default of drug diversion, it never proved that Dufault had been using drugs. Nonetheless, Plaintiff argues that, unlike the employer in *Eastern*, the hospital has independent responsibilities regarding the medications in question. In the court's view, however, this is a distinction without a difference. Plaintiff neglects to mention that, unlike the truck driver in *Eastern*, Dufault was found by the arbitrator only to have committed documentation errors. Moreover, there was no proof that any medication in fact was missing. At bottom, here as in *Eastern*, "[t]he parties bargained for arbitration to settle disputes" and should therefore be bound by the arbitrator's determination. *Id.* at 39. *See also W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber*, 461 U.S. 757, 765 (1983) ("Regardless of our view might be of the correctness of [the arbitrator's] contractual interpretation, the Company and the Union bargained for that interpretation. A federal court cannot second-guess it.").

Second, the First Circuit's *BMC* decision also supports the arbitrator's actions here. In *BMC*, a nurse was discharged after engaging in serious substandard practices that led to the death of a baby. The arbitrator, however, reversed the discharge, opting instead for a nine-month unpaid suspension in light of the nurse's ten-year record of unblemished employment. Denying the hospital's motion to vacate the award, the court found that, while Massachusetts has an obvious concern for patient safety and competent nursing care, there was no public policy expressly prohibiting the nurse's reinstatement. That result appears mandated here as well.

Third, the court is not persuaded by any of the decisions cited by Plaintiff which, ostensibly, vacated arbitration awards on public policy grounds. Two of the decisions have been abrogated by the Supreme Court, *see Exxon Corp. v. Esso Workers' Union,* 118 F.3d 841 (1st Cir. 1997), *abrogated by Eastern*, 531 U.S. at 61; *United States Postal Service v. Am. Postal Workers Union*, 736 F.2d 822 (1st Cir. 1984), *abrogated by Misco*, 484 U.S. at 35, and a third, *Illinois Nurses Ass'n v. Bd. of Trustees of the Univ. of Ill.*, 741 N.E.2d 1014 (Ill. App. Ct. 2001), is distinguishable. In *Illinois Nurses*, the court held that an arbitrator's award reinstating a nurse violated a state statute favoring safe nursing care. In contrast to the case at hand, the Illinois statute explicitly provided that that state has a "public interest" favoring safe nursing. *See id.*, 741 N.E.2d at 1014 (citing Illinois Nursing Act of 1987 (225 ILCS 65/1 *et seq.* (West 1992)).[2] It is that kind of positive law (not present here) which *Eastern* requires.

---

[2] In pertinent part, the Illinois statute provided as follows: "The practice of professional and practical nursing in the State of Illinois is hereby declared to affect the public health, safety, and welfare and to be subject to regulation and control the public

Finally, the court finds misguided Plaintiff's reliance on *Russell Mem'l Hosp. Ass'n v. United Steelworkers of Am.*, 720 F. Supp. 583 (E.D. Mich. 1989). As Plaintiff notes, the court in *Russell* determined that Michigan has a public policy in favor of providing safe and competent nursing care and, accordingly, vacated the reinstatement of a nurse who had been discharged for negligently administering medication. In so finding, however, the *Russell* court relied on the rationale in two cases that the First Circuit has explicitly declined to follow, namely, *Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 861 F.2d 665 (11th Cir. 1988), and *Iowa Elec. Light & Power Co. v. Local Union 204 Int'l Bhd. of Elec. Workers*, 834 F.2d 1424 (8th Cir. 1987). *See BMC*, 260 F.3d at 25 n.7. As has the First Circuit, this court believes that both *Delta* and *Iowa* -- and, hence, *Russell* -- provide unpersuasive indicators as to whether the reinstatement of a Massachusetts nurse violates Massachusetts' public policy. In other words, the court has little choice but to recommend rejection of Plaintiff's public policy argument.[3]

Before concluding, the court has two additional comments. First, given its recommendation, the court finds it unnecessary to address Defendant's alternative contention, i.e., that, assuming *arguendo* that the reinstatement order violated Massachusetts' public policy, the termination itself violated Dufault's due process

---

interest. It is further declared to be a matter of public interest and concern that the practice of nursing, as defined in this Act, merit and receive the confidence of the public and that only qualified persons be authorized to so practice in the State of Illinois." 225 ILCS 65/2 (West 1992).

[3] The court does not suggest that Plaintiff is without a remedy concerning Defendant's discipline since, it appears, that the state board responsible for licensing nurses can independently address the issue.

rights. Second, the court has not addressed a separate request raised for the first time in Defendant's brief, namely, "that the Court award costs, attorneys['] fees, and such other and further relief as justice may require." (Document No. 15 at 9.) Plaintiff has not had the opportunity to respond to this latter request. Should this report and recommendation be adopted, however, Defendant, perhaps, should be given the opportunity to pursue that request.

IV. CONCLUSION

For the reasons stated, the court recommends that Plaintiff's motion to vacate the arbitration award be DENIED and that Defendant's cross-motion to confirm the award be ALLOWED.[4]

DATED: January 13, 2005

/s/ Kenneth P. Neiman

---

[4] The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

                                                KENNETH P. NEIMAN  
                                                U.S. Magistrate Judge