UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

The Mercy Hospital, Inc.,
    Plaintiff

v.

Massachusetts Nurses Association,
    Defendant

Civ. No. 04-30014-MAP

## OPPOSITION TO PLAINTIFF'S OBJECTION TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.   Introduction

Pursuant to F.R.Civ.P. 72(b) and Rule 3(c) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, the Defendant Massachusetts Nurses Association hereby submits its opposition to the Plaintiff's Objection to the Report and Recommendation of the Magistrate Judge in the above-referenced matter. As set forth below, the Plaintiff's Objection is both untimely and without merit. The Defendant further opposes the Plaintiff's Objection because the Plaintiff has failed to "promptly arrange for the transcription of the record, or portions of it as all parties may agree upon or the magistrate judge deems sufficient, unless the district judge otherwise directs" as required by F.R.Civ.P. 72(b); instead, the Plaintiff has included materials not part of the proper record before the magistrate judge in its Objection. The Court should ADOPT the Report and Recommendation of the Magistrate Judge.

## II.     The Plaintiff's Objection Is Untimely

As a preliminary matter, the Plaintiff's Objection is untimely and should not be considered by the District Court.[1] The Plaintiff has sought to stretch the 10 day period for filing its Objection impermissibly to 20 days. The District Court should satisfy itself that the Report and Recommendation contains no clear error, which it does not, and enter summary judgment for the Defendant.

The time for filing an objection to a Magistrate Judge's Report and Recommendation (hereinafter, Report and Recommendation) is governed by F.R.Civ.P. 72(b), F.R.Civ.P. 6(a), and F.R.Civ.P. 6(e). See, e.g., Advisory Committee Notes to Rule 72. Rule 72(b) provides that objections may be filed within ten (10) days after being served with a copy of the recommended disposition. Rule 6(a) provides that for a period of prescribed or allowed time of less than eleven (11) days, "intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." As Rule 72(b) allows for fewer than eleven days for filing objections to a Report and Recommendation, Rule 6(a) is operative. In addition, Rule 6(e) adds three (3) days to the prescribed period to allow for service (regardless of whether service of the Report and Recommendation is made by mail or electronically). If the last day of a computed period is a Saturday, Sunday, or legal holiday, the period runs "until the end of the next day which is not one of the aforementioned days." F.R.Civ.P. 6(a).

The penalty for failure to timely file an objection is severe. Rule 3(b) for United States Magistrate Judges in the United States District Court for the

---

[1] This argument and analysis have also been submitted in a separate Motion to Strike the untimely Objection.

District of Massachusetts requires all Reports and Recommendations to contain "clear notice to the parties that failure to file timely and appropriate objections to that report and recommendation under the provisions of this Rule will result in preclusion of the right to appeal the district court's order to the United States Court of Appeals." See Campbell v. United States Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974), cert. denied, 419 U.S. 879 (when no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation); United States v. Walters, 638 F.2d 947 (6th Cir. 1981) (failure to make timely objection may constitute waiver of appellate review); Thomas v. Arn, 474 U.S. 140 (1985) (enforcing 6th Circuit's rule of waiver); 32 AmJur 2d, Federal Courts, at §198 p. 477-478 (Objections to magistrate's decisions). Within the First Circuit, this has been the consequence for failure to file timely objection. See, e.g., Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); Scott v. Schweiker, 702 F.2d 13 (1st Cir. 1983) (denying appellate review where no timely objection filed); Keating v. Sec. of Health and Human Services, 848 F.2d 271, 273 (1st Cir. 1988) (declining to consider issues not raised before the magistrate, and not before the district court). In this case, the Report and Recommendation contained the clear notice required by Rule 3(b). See Report and Recommendations at p. 10 n. 4.

Here, the Report and Recommendation is dated, and was electronically filed, on Thursday, January 13, 2005. See Report and Recommendation at 1 and 10. There is debate among courts and in the commentary about whether the Rule 72(b) 10 day period (excluding weekends and holidays) or the Rule 6(e) 3-day period should be counted first. See, e.g., Wright & Miller, v. 4B, § 1171,

at 596-603 and cases cited (preferring to first compute the 10-day period under Rule 6(a), and then adding 3 calendar days pursuant to Rule 6(e)). In this case, however, it does not matter. If, as Wright and Miller prefer, the ten day period is counted first, excluding weekends and holidays, the ten days are January 14, 18, 19, 20, 21, 24, 25, 26, 27, and 28 (a Friday).[2] Three calendar days added thereto are Saturday January 29, Sunday January 30, and Monday January 31. An Objection filed on Wednesday February 2, as the Plaintiff's was, is untimely.

If, instead, the 3 calendar days derived from Rule 6(e) are counted first, they are January 14, 15, and 16 (note that the date does not advance to January 18 pursuant to Rule 6(a) because the last day of the entire period calculated has not yet been determined). The 10 days to be counted under Rule 72(b) and Rule 6(a) are January 18,[3] 19, 20, 21, 24, 25, 26, 27, 28, and Monday January 31. Again, this is two days before the Plaintiff filed its objection in this case.

Note that the 10 day period and the 3 day period should not be merged to form a single 13 day period, as this would remove the period from Rule 6(a). See Wright & Miller, § 1171, at 597-598. Nor should weekends and holidays be excluded from the Rule 6(e) 3-day period, as Rule 6(e) does not speak of a separate period, but rather of adding three days to the prescribed period. See also Wright & Miller, § 1171, at 598-599; Lerro v. Quaker Oats Co., 84 F.3d 239, 241-242 (7th Cir. 1996) (discussion of proper application of period for filing objections).

---

[2] Monday, January 17, Martin Luther King, Jr. Day, is excluded as a legal holiday.
[3] Again, January 17 is skipped.

4

The first method described above, that preferred by Wright & Miller, appears to be dominant. See, e.g., Berman v. Congressional Towers Ltd. Partnership, 325 F.Supp. 2d 590, 592-594 (D.Md. 2004). The First Circuit decisions expressing an opinion on the matter have adopted the second method, which provides for no different result here. See, e.g., Coles Express v. New England Teamsters and Trucking Industry Pension Fund, 702 F.Supp. 355 (D. Me. 1988); Winters v. FDIC, 812 F.Supp. 1, 4 (D. Me. 1992); Ramsdell v. Bowles, 64 F.3d 5, 8 and n. 1 (1st Cir. 1995) (appeal from case in the District for Maine), cert. denied sub nom. Ramsdell v. Machias Sav. Bank, 516 U.S. 1113 (1996). Importantly, both the Wright & Miller method and that discussed in the First Circuit to date agree that weekends and holidays are not to be excluded from the Rule 6(e) 3-day period. The Court should not hesitate to follow the majority view in calculating the time permitted for filing objections and, accordingly, to find that the Plaintiff's Objection is untimely.[4]

### III. The Plaintiff's Objection Is Without Merit

Should the Court reach the merits of the Plaintiff's Objection, it should nevertheless enter judgment for the Defendant and enforce the arbitrator's Award, as the Plaintiff's Objection lacks all merit.

#### A. The Magistrate Judge Properly Relied Upon His Cited Authority.

The Plaintiff's Objection relies for the most part on the alleged failure on the part of the Magistrate Judge to understand several leading cases in the field of labor arbitration. However, it is the Plaintiff that either misunderstands or misstates the holdings in these cases.

---

[4] If the Court is inclined to consider whether the late-filed Objection should nevertheless be considered, the Defendant asks to be permitted to present evidence as to the prejudice

First, the Plaintiff alleges that the Magistrate Judge misconstrues the holding in <u>Eastern Associated Coal Corp. v. United Mine Workers of America</u>, 531 U.S. 57 (2000). <u>See</u> Plaintiff's Objection at 10-16. The Magistrate Judge's reasoning is caricatured as follows:

> This is not a correct statement of the Eastern holding, because it effectively states that Eastern requires that unless a positive law mandated the dismissal of an employee who (in that case) tested positive for drugs, no arbitration decision short of that could be challenged, or in other words, that only violations of positive law are subject to challenge.

Plaintiff's Objection at 10. However, the criticized portion of the Magistrate Judge's Report and Recommendation cites directly to a portion of the <u>Eastern</u> opinion that essentially agrees with what the Magistrate Judge writes. <u>Compare</u> Eastern at 67 ("Neither Congress nor the Secretary has seen fit to mandate the discharge of a worker who twice tests positive for drugs. We hesitate to infer a public policy in this area that goes beyond the careful and detailed scheme Congress and the Secretary have created.") and Report and Recommendation at 7. That the Magistrate Judge drew upon this particular portion of the <u>Eastern</u> decision does not mean that he failed to apply the Eastern decision as a whole; as with the Supreme Court in Eastern, the Magistrate Judge merely declined to infer the existence of a public policy against reinstatement of the grievant.

The Plaintiff is similarly misdirected in claiming that the Report and Recommendation fails to comply with the <u>Boston Med. Ctr. v. SEIU Local 285</u>, 260 F.3d 16 (1st Cir. 2001) decision. The BMC court recognized the importance of deference to the bargain that the parties struck. See id at 20-22.

---

suffered by the Defendant and the grievant as a result of the delay in resolving this matter.

6

The Report follows this important rule. Here, the Plaintiff bargained only for the unreviewable right to terminate probationary employees. Because the grievant was no longer probationary, the Plaintiff had agreed to have any discipline of her reviewed by an arbitrator under a just cause standard.

The Plaintiff goes on at p. 11 to misstate the significance of this case, characterizing the award as having been interpreted as an "agreement to not only reinstate but also prohibit discipline" of the grievant. Neither the collective bargaining agreement, nor the Arbitrator's Award which is construed to be a part of it, prohibits discipline of the grievant. Rather, the Arbitrator found, as she was entitled to in view of the evidence, that the Plaintiff *had not proven its case*:

> **The Hospital failed to carry its burden of proof in this matter.** The preponderance of the evidence in the record supports the Grievant's denial of any culpability with respect to the Hospital's charges of drug diversion. The Grievant was denied due process when she was not provided with all relevant records, including her own notes, until the arbitration hearing in this matter commenced approximately six (6) months after her termination and over nine (9) months after the period of time under investigation. In spite of being unable to examine all relevant records and in spite of the passage of time, the Grievant credibly testified as to what she believed were the most likely actions she took (or did not take) with respect to the narcotics she removed from the Omnicell and was accused of diverting. In light of the Hospital's failure to submit a preponderance of evidence that contradicts the Grievant's account, much less any evidence whatsoever that the Grievant was using controlled substances herself, the termination of the Grievant is found to be without just cause.

Award at 15 (emphasis added). Compare Objection at 13 ("These explicit standards are repudiated by the arbitrator's opinion because the Hospital is prohibited from disciplining a nurse for violation of these very standards.") In

7

another arbitration, with better evidence or a different presentation (i.e., where just cause is shown to exist), a grievant might well be disciplined on similar charges. Yet, the Plaintiff continues to argue as though it had proven its case, but the Arbitrator (and now, the Magistrate Judge) simply refused to permit termination of the grievant.

The Plaintiff goes on to complain that the Arbitrator's Award assessed no penalty against the "offender." Again, calling the grievant "the offender" assumes that the Plaintiff *proved its case*, which it did not. Further, the Plaintiff's argument assumes that the Arbitrator was <u>required</u> to impose some discipline on the grievant for whatever technical violations it believes it proved, regardless of the gravity of those violations, regardless of whether such violations were mistaken or purposeful and regardless of all of the surrounding circumstances – in short, *whether or not just cause existed for such discipline.* This is the very question that the Plaintiff left to the Arbitrator, and it is a distinct from whether the Arbitrator "condoned" all of the grievant's behavior. By declining to impose discipline on the grievant, the Arbitrator found that no just cause existed for discipline. Nowhere does the Arbitrator state that she "condoned" all of the grievant's actions; nowhere does the Plaintiff cite authority for the proposition that an arbitrator must impose some discipline in every case the employer believes it is due, regardless of just cause.

The Court should make no mistake: the Plaintiff is asking for the right to ignore the just cause provisions it bargained for, if it can only link an employee's behavior to a regulation somewhere. If adopted, this approach would deal a serious blow to nearly a century of just cause jurisprudence.

8

The Plaintiff goes on to distort the Arbitrator's specific findings. The Arbitrator did not find that the grievant "misstated the time and amount of dosages of controlled substances she administered" (Plaintiff's Objection at 13, first bullet point); rather, she found that the grievant's testimony that "she may have [unintentionally] mis-stated the time(s) and/or amount(s) of dosages when she did her paperwork at the end of her shift; if she was operating mostly from memory by that time it would be surprising if she *could* remember *exactly* what she did when over the course of a 12 hour shift." Award at 13 (emphasis in original).

Nor does the Arbitrator, at the pages cited by the Plaintiff at any rate, find that the grievant "failed, completely on some occasions, to record her administration of controlled substances in the medical record (SMS/MAR) where it was to be properly recorded" (Plaintiff's Objection at 14, first bullet point); such a finding simply does not exist.

The Arbitrator does find, or at least strongly imply, that the grievant "withdrew 'additional' medications prior to the time they were needed." (Plaintiff's Objection at 14, second bullet point). Her actually finding credits testimony that it was "routine practice" for all of the ICU nurses, "because it's such busy place, there's so much going on, if a patient was on any kind of medication drip, whether be it a vasoactive medication, or like a morphine drip, or a sedative, just out of common courtesy, we would mix up another bag for the oncoming shift if we knew that could run out fairly shortly." Award at 12. Left unsaid, but well known to all concerned, is the just cause principle of equal treatment – an employer cannot single out just one employee for discipline where every employee does the same thing. Nowhere does the

9

arbitrator "mock" related regulatory standards; rather, she finds that the general practice in the grievant's unit deviated to an extent from such standards, and that in such a context, no just cause existed to terminate the grievant for her practice, particularly where the actual allegation against the grievant was that she "knowingly engaged in drug diversion." Award at 9.

The Arbitrator does not find that the grievant administered a medication in the "opposite of the manner prescribed by the physician" (Plaintiff's Objection at 14, third bullet point) or that this was not "good practice." (Plaintiff's Objection at 14 n.5) Rather, she recites testimony to that effect. Award at 14. Even conceding that this was not optimal practice, the Plaintiff is well aware that delivery of a medication by the "wrong route" is not typically a disciplinary matter. The Plaintiff continues to misstate the Arbitrator's statement that "what the Grievant thought she did" was not "impossible or medically lethal" as if that were the standard of practice to which the grievant was being held. Compare Award at 14 with Plaintiff's Objection at 15. In context, the Arbitrator's statement was no more than an evidentiary evaluation supporting her ultimate conclusion that, contrary to the Plaintiff's initial allegation, the grievant had not stolen the medications in question. See Award at 2, 9, and 15.

Finally, the Plaintiff complains that the Arbitrator "ignores" the grievant's alleged failure to document the waste of controlled substances. As no such finding was included in the Award, the Plaintiff is at best arguing that the Arbitrator committed an error of fact. Such errors are not reviewable.

    **B.**    **The Plaintiff's Objection Is In Part Too Vague.**

10

Rule 72(b)(second paragraph) requires that an objecting party file "specific" written objections to the report and recommendation of a magistrate judge. The Plaintiff's objections are in part so vague as to fail to comply with this rule, and should therefore not be considered by the Court. In particular, the following portion of the Plaintiff's objection lacks specificity by its own terms:

> Beyond these specific objections, the plaintiff objects to the Report and to the Arbitration Award because it is evident even on the face of the award that the arbitrator has prohibited the Hospital from disciplining a registered nurse who had, on multiple occasions, violated the statutory and regulatory standards for the control, withdrawal, documentation and administration of controlled substances.

Objection at 2. In any event, it is clear from the Award that the Arbitrator prohibited the Plaintiff from terminating the grievant for "the acts that formed the basis of her termination, namely that she knowingly engaged in drug diversion." Award at 9. The Plaintiff simply failed to make its case in this respect.

### C. The Magistrate Judge Did Not Address The Due Process Basis For Reinstatement.

The Plaintiff attacks the Arbitrator's finding that its termination of the grievant violated due process, pretending that the Arbitrator created due process requirements out of whole cloth. To the contrary, and as the Plaintiff is well aware, a due process analysis is an essential and well-established part of the just cause analysis. See, e.g., Koven and Smith, Just Cause: The Seven Tests (2d ed. 1992) at 179-218; Elkouri & Elkouri, How Arbitration Works (6th ed. 2003) at 967-969. As with the remainder of the Plaintiff's arguments, at bottom is here no more than disagreement with the result. In any event, as the

Report and Recommendation of the Magistrate Judge does not address the due process argument (see Report and Recommendation at 9-10), it is premature to analyze the due process argument made by the Arbitrator.

## IV.   The Plaintiff Has Failed To Assemble A Proper Record

Rule 72(b) requires the an objecting party, such as the Plaintiff here, to "promptly arrange for the transcription of the record, or portions of it as all parties may agree upon or the magistrate judge finds sufficient, unless the district judge otherwise directs." F.R.Civ.P. 72(b)(second paragraph). Instead of doing this, the Plaintiff has appended to its Objection its post-hearing brief to the arbitrator (Plaintiff's exhibit 2), selected portions of the transcript of the arbitration hearing (Plaintiff's exhibit 3), and an exhibit from the arbitration hearing (Plaintiff's exhibit 4). None of these documents are appropriate parts of the record; because the Plaintiff's "Statement of Facts" relies heavily on these documents, it too is not properly before the Court.[5]

The facts before this Court are as the Arbitrator found them, even if the Arbitrator erred in some respect, as long as the Arbitrator has not been shown to have acted in bad faith. See, e.g., El Dorado Technical Servs., Inc. v. Union General de Trabajadores de Puerto Rico, 961 F.2d 317, 320 (1st Cir. 1992). Here, there has been neither a showing nor an allegation of bad faith on the part of the Arbitrator. The record should consist solely of the Arbitrator's Award, the collective bargaining agreement, and the transcript of the proceedings before the Magistrate Judge, if any. The Association therefore objects to the Hospital's "statement of facts" to the extent it deviates from the facts as determined by the arbitrator, and to the inclusion of Plaintiff's exhibits

2, 3 and 4 in the record. The Association notes that the Arbitrator was not required to, and evidently did not, accept the testimony, exhibits, and brief submitted on behalf of the Plaintiff as credible or dispositive. It was inappropriate for the Plaintiff to include them here, as it likewise tried to include them in the record before the Magistrate Judge (where the Association likewise made them subject to a motion to strike[6]). The Court should not consider them.

### V.     Conclusion

The grievant in this matter is an excellent nurse and a real person who has not been returned to her career in the employ of the Plaintiff despite an award reinstating her in December 2003. The delay in reinstating her borders on the abusive. The Association notes that efforts, like the Plaintiff's, to re-litigate an arbitration at every available opportunity not only undermines the public policy in favor of arbitration of labor disputes, but also operates to discourage parties from agreeing to have cases heard at the Magistrate Judge level. For all of the reasons set forth in this Opposition, the Court should decline to consider the Plaintiff's Objection; if the Court considers the Plaintiff's Objection in part, it should decline to consider the materials improperly brought before it; and if the Court considers the whole or any part of the Plaintiff's Objection, it should nevertheless enter judgment for the Defendant and enforce the Arbitrator's award.

---

[5] As with the Association's argument as to (un)timeliness, this section of the Objection has also been included in a separate Motion to Strike.
[6] The Report and Recommendation does not specifically rule on the Association's previous Motion to Strike, which was not filed separately. However, it states at page 1 that "As the parties are well aware, the court must rely on the facts as the arbitrator found them," which is at minimum a strong implication that the Plaintiff's extraneous materials were not considered.

13

Respectfully submitted,

For the Defendant

Massachusetts Nurses Association

By its attorney,

_____
Mark A. Hickernell
BBO # 638005
McDonald & Associates
153 Cordaville Road, Suite 210
Southborough, MA 01772
(508) 485-6600

Date: February 18, 2005

## CERTIFICATE OF SERVICE

I, Mark A. Hickernell, hereby certify that I have this day by facsimile and first-class mail, postage prepaid, served a copy of the foregoing Opposition to Plaintiff's Objection to the Report and Recommendation of the Magistrate Judge upon Maurice M. Cahillane, Esq., Egan, Flanagan and Cohen, P.C., 67 Market Street, P.O. Box 9035, Springfield, Massachusetts 01102-9035.

Dated: February 18, 2005

_____
Mark A. Hickernell

14